# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## GREENEVILLE DIVISION

| | | |
|---|---|---|
| BRANDI NICOLE HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. |
| | ) | JURY TRIAL DEMANDED |
| BIRTH TISSUE DONOR SERVICES OF | ) | |
| TENNESSEE, INC., BIRTH TISSUE | ) | |
| DONOR SERVICES OF AMERICA, INC., | ) | |
| and PATRICK ABDELMESSIH, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

COMES NOW Plaintiff, Brandi Nicole Harris ("Ms. Harris"), through undersigned counsel, and for her Complaint against Birth Tissue Donor Services of America, Inc., Birth Tissue Donor Services of Tennessee, Inc. (collectively, "BTDS"), and Patrick Abdelmessih ("Abdelmessih") (collectively, "Defendants"), states as follows:

### NATURE OF THE CASE

1. This is an action brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Tennessee Human Rights Act, Tenn. Code § 4-21-101 *et seq.*, Oregon Revised Statute § 659.030, and various state common law claims under the laws of Tennessee and Oregon, to remedy acts of sexual harassment, constructive discharge, retaliation, battery, defamation, tortious interference with employment expectancy, and other unlawful employment practices committed by Defendants against Ms. Harris.

2. Ms. Harris was an employee of BTDS and experienced severe and pervasive sexual harassment by her supervisor, the company's Vice President of Operations, Patrick Abdelmessih,

when she rebuffed his advances.

3. The harassment included unwelcome sexual comments and touching and culminated in a physical assault and battery.

4. BTDS was aware of the harassment and of Abdelmessih's history of similar conduct but took no action to protect Ms. Harris or stop the harassment.

5. Ms. Harris was forced to resign in a constructive discharge.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this is a civil action arising under the laws of the United States, specifically Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq.

7. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

8. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district. BTDS is based in Tennessee. BTDS assigned Ms. Harris a home office in Blountville, Tennessee, where she performed a substantial portion of her work, rendering East Tennessee the principal location of her employment relationship. BTDS regularly conducts business in this district.

9. Ms. Harris has exhausted her administrative remedies under Title VII by timely filing a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") against BTDS. The EEOC is currently closed and not issuing Notices of Right to Sue due to the federal government shutdown, but Ms. Harris's Charge of Discrimination was filed with the EEOC more than 180 days prior to the commencement of this suit. Ms. Harris intends to amend

this Complaint to attach a Notice of Right to Sue when it is issued by the EEOC.

## PARTIES

10.     Plaintiff Brandi Nicole Harris is an adult citizen of Virginia and resides in Wise, Virginia. Ms. Harris was an employee of BTDS with her designated home office in Blountville, Tennessee, but she traveled to various out-of-state sites for her work with BTDS including Virginia, Montana, Connecticut, Oregon, Nebraska, South Carolina, and Georgia.

11.     Defendants Birth Tissue Donor Services of America, Inc. and Birth Tissue Donor Services of Tennessee, Inc. are companies organized and existing under the laws of the State of Tennessee with their principal place of business at 404 North Willow Avenue in Cookeville, Tennessee. At all relevant times, each of these BTDS entities was an employer as defined by Title VII, employing fifteen (15) or more employees and/or agents. Each of these BTDS entities was also an employer as defined by the Tennessee Human Rights Act and Oregon Revised Statute § 659.030.

12.     Defendant Patrick Abdelmessih is an individual residing in Abingdon, Virginia. At all relevant times, Defendant Abdelmessih was employed by BTDS as Vice President of Operations and held supervisory authority over Ms. Harris, including the ability to hire, fire, reprimand, write up, and promote such employees as Ms. Harris. Abdelmessih essentially ran the company, and the President had minimal involvement in BTDS's operations.

## FACTUAL ALLEGATIONS

13.     Ms. Harris was an employee of BTDS from on or about October 17, 2022, until on or about November 13, 2024.  She was qualified for her position and performed her job satisfactorily.

14. Throughout her employment with BTDS, Ms. Harris was subjected to severe and pervasive sexual harassment by Abdelmessih, including but not limited to the following:

a. On or about September 26, 2024, Ms. Harris was on a scouting trip in Oregon with Defendant Abdelmessih and other employees of BTDS. At some point during this trip, Ms. Harris was traveling in a vehicle with Defendant Abdelmessih and other BTDS employees when Defendant Abdelmessih began berating Ms. Harris, calling her a "goat fuck fucking retard."

b. On another occasion, Defendant Abdelmessih threw a chair at his wife, who is also employed by BTDS, with enough force that it put a "fist-sized" hole in the wall of the Blountville, Tennessee office. Ms. Harris was not present when Defendant Abdelmessih threw the chair, but she did see the aftermath. Knowledge of this incident placed Ms. Harris in fear for her own safety. This incident was typical behavior of Defendant Abdelmessih towards women.

c. Defendant Abdelmessih told Ms. Harris, "I bet you can talk through a blow job."

d. Defendant Abdelmessih constantly told Ms. Harris that she should "flick [her] bean" while thinking of him, which was a crude reference to masturbation.

e. During another car ride with Defendant Abdelmessih, he grabbed Ms. Harris by the back of the neck and forced Ms. Harris's head towards his crotch. Ms. Harris was terrified as she was alone with Defendant Abdelmessih in a vehicle and had no means of escape.

f. Following Ms. Harris's wedding on November 2, 2024, Defendant Abdelmessih began to intensely harass Ms. Harris, stating that her husband was a "fag" and that getting married was the "dumbest thing [she's] ever done."

g.  During a meeting on November 8, 2024, at the end of a long day, Ms. Harris began to rub Ms. Harris's lower back because she was tired and her back was hurting. In response, Defendant Abdelmessih exclaimed, "That tramp stamp's not gonna rub off." Ms. Harris responded by explaining that she was rubbing her back because it "hurts under there." Defendant Abdelmessih then stated, "I have plenty of things that just went through [my mind] and I'm just [going to] shut them all down."

15. BTDS employees observed Defendant Abdelmessih's concerning and inappropriate behavior numerous times. BTDS employee Matt Conzet specifically witnessed Defendant Abdelmessih verbally assault and humiliate Ms. Harris on multiple occasions. In fact, Conzet was often so concerned that he would call Ms. Harris after an incident to see if Mr. Harris was okay.

16. On November 12, 2024, Ms. Harris informed one of her direct supervisors, Kami Spurlock, Area Program Director, that Ms. Harris had obtained other employment and that she was giving her two weeks' notice. Ms. Harris communicated to Spurlock that she was distressed by Defendant Abdelmessih's harassment and that she was in fear for her physical safety.

17. Spurlock offered Ms. Harris more money to stay with BTDS, but Ms. Harris insisted she would only stay if she no longer had to be around Mr. Abdelmessih. Spurlock asked Ms. Harris to meet with her and Defendant Abdelmessih to discuss it over drinks before a planned business dinner. Ms. Harris was uncomfortable with this proposition and tried to decline. Spurlock appeared to relent to Ms. Harris's concerns and proposed the meeting could take place at the office instead.

18. Ms. Harris arrived at the office for the meeting with Defendant Abdelmessih, but Spurlock insisted that they proceed to the bar. There, Defendant Abdelmessih hugged Ms. Harris.

Later in the evening, Defendant Abdelmessih put his arm around Ms. Harris and said, "so, if you leave, does that mean you can sleep with me now?" These interactions caused Ms. Harris extreme discomfort and anxiety.

19. After dinner, while in the parking lot, Defendant Abdelmessih put his hands on Ms. Harris's shoulders and demanded, "Look at me!" Defendant Abdelmessih then slapped Ms. Harris's face with such force that it left a mark. Defendant Abdelmessih said, "That's for getting married and making stupid fucking decisions." He then poked Ms. Harris's breasts and said, "Why are they so hard?" before turning to Spurlock and saying, "She has tits – you have no tits."

20. Ms. Harris was stunned, hurt, and degraded by Defendant Abdelmessih's actions. Spurlock texted Ms. Harris later than evening and in response, Ms. Harris said, "he literally smacked the shit out of me in the parking lot tonight right in front of you." Spurlock, who had until then been responding to Harris's texts, stopped responding. Ms. Harris took photographs of the mark left on her face by the slap.

21. Ms. Harris was so distraught by the preceding events that she immediately bought a plane ticket and flew home in the middle of the night and promptly filed a police report.

22. As a result of the severe sexual harassment and BTDS's failure to take any remedial action, Ms. Harris was forced to resign from her position in a constructive discharge. Ms. Harris composed an email to HR Manger Brent Harris, HR Assistant Destiney, and CEO Sherry Spradling detailing Defendant Abdelmessih's harassing and discriminatory conduct. Brent Harris responded merely by asserting that Defendant Abdelmessih did not throw the chair at Knopp but rather kicked the chair and hit the wall – admitting to Defendant Abdelmessih's inappropriate and threatening actions and implicitly admitting that no action had been taken in response.

23. Following her departure from BTDS, Ms. Harris was prepared to begin working for a new employer, but the job suddenly evaporated based on alleged findings on the background check. Nothing in Ms. Harris's background should have caused the job offer to be rescinded. Ms. Harris has reason to believe that Defendant Abdelmessih made false and defamatory statements to the new employer or its agents that caused the employer to rescind the job offer, as further retaliation against Ms. Harris.

24. Based on information and belief, Defendant Abdelmessih was terminated from his prior employer, Tennessee Donor Services, because of sexual harassment. Defendant Abdelmessih's boss at that time was the mother of the current training manager at BTDS and the training manager revealed this information to people at BTDS.

25. Defendant Abdelmessih had a history of bringing female employees to his Airbnb rentals while traveling for work and had been instructed previously by BTDS management not to stay in Airbnbs for this reason (a directive Defendant Abdelmessih openly disregarded.).

26. Members of BTDS management, including Spurlock, HR Manager Brent Harris, and CEO Sherry Spradling, were aware of Abdelmessih's conduct but failed to initiate any investigation or corrective action.

27. BTDS had ample knowledge of Defendant Abdelmessih's history of sexual harassment of subordinates yet took no action calculated to stop the harassment of Ms. Harris or other employees.

28. The actions of Defendants have caused Ms. Harris to suffer severe mental injury. The sexual harassment, sex discrimination, hostile work environment based on sex, and retaliation, and the actions of Defendant Abdelmessih, have caused Ms. Harris to experience sleeplessness, depression, anxiety, crying, emotional outbursts, nightmares, nausea, fright, grief, shame,

Case 2:25-cv-00187-DCLC-CRW    Document 1    Filed 11/05/25    Page 7 of 21    PageID #: 7

humiliation, embarrassment, anger, disappointment, worry, fear, stress, lethargy, increased irritability, decreased job satisfaction, isolation, lower self-esteem, panic attacks, stomach/gastrointestinal issues and intimacy issues. The consistency and frequency of these issues have been significant since the harassment began during Ms. Harris's employment with BTDS. These symptoms have required medical and therapeutic treatment and have substantially interfered with her daily functioning and ability to work.

## COUNT I:

### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000E ET SEQ.
### SEXUAL HARASSMENT/HOSTILE WORK ENVIRONMENT
(Against BTDS)

29. Ms. Harris incorporates all paragraphs and allegations in this Complaint listed above as if fully alleged herein.

30. Defendants subjected Ms. Harris to unwelcome sexual harassment in the form of unwanted sexual advances, comments, physical contact, and other verbal and physical conduct of a sexual nature.

31. This harassment was based on Ms. Harris's sex and classification as a female.

32. This harassment was sufficiently severe and pervasive to alter the conditions of Plaintiff's employment and create an abusive, hostile, and intimidating work environment.

33. Defendant BTDS is liable for the harassment perpetrated by Defendant Abdelmessih, who was Ms. Harris's superior, with authority to take tangible employment actions against her.

34. Defendant BTDS knew or should have known about the harassment and failed to take prompt and appropriate remedial action to prevent its recurrence.

35. The conduct of Defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

36. As a direct and proximate result of Defendants' unlawful conduct, Ms. Harris has suffered and continues to suffer damages, including but not limited to lost wages and benefits, emotional distress, humiliation, embarrassment, physical manifestations of stress, and loss of enjoyment of life.

37. Defendants' actions were committed with malice or with reckless disregard for Plaintiff's federally protected rights, entitling her to punitive damages.

## COUNT II:

### TENNESSEE HUMAN RIGHTS ACT
### SEXUAL HARASSMENT
### (Against BTDS)

38. Ms. Harris incorporates all paragraphs and allegations in this Complaint listed above as if fully alleged herein.

39. Defendants subjected Ms. Harris to unwelcome sexual harassment in the form of unwanted sexual advances, comments, physical contact, and other verbal and physical conduct of a sexual nature.

40. This harassment was based on Ms. Harris's sex and classification as a female.

41. This harassment was sufficiently severe and pervasive to alter the conditions of Plaintiff's employment and create an abusive, hostile, and intimidating work environment.

42. Defendant BTDS is liable for the harassment perpetrated by Defendant Abdelmessih, who was Ms. Harris's superior with authority to take tangible employment actions against her.

43. Defendant BTDS knew or should have known about the harassment and failed to take prompt and appropriate remedial action to prevent its recurrence.

44. The conduct of Defendants violated the Tennessee Human Rights Act ("THRA").

45. As a direct and proximate result of Defendants' unlawful conduct, Ms. Harris has suffered and continues to suffer damages, including but not limited to lost wages and benefits, emotional distress, humiliation, embarrassment, and loss of enjoyment of life.

46. Defendants' actions were intentional, willful, malicious, and/or done with reckless disregard for Plaintiff's rights under the THRA, entitling Plaintiff to punitive damages.

## COUNT III:

### OREGON REVISED STATUTE § 659.030
### SEXUAL HARASSMENT
### (Against BTDS)

47. Ms. Harris incorporates all paragraphs and allegations in this Complaint listed above as if fully alleged herein.

48. Defendants subjected Ms. Harris to unwelcome sexual harassment in the form of unwanted sexual advances, comments, physical contact, and other verbal and physical conduct of a sexual nature.

49. This harassment was based on Ms. Harris's sex and classification as a female.

50. This harassment was sufficiently severe and pervasive to alter the conditions of Plaintiff's employment and create an abusive, hostile, and intimidating work environment.

51. Defendant BTDS is liable for the harassment perpetrated by Defendant Abdelmessih, who was Ms. Harris's superior, with authority to take tangible employment actions against her.

52. Defendant BTDS knew or should have known about the harassment and failed to take prompt and appropriate remedial action to prevent its occurrence.

53. A substantial portion of the harassment occurred while Ms. Harris was performing work for BTDS in the state of Oregon.

54. The conduct of Defendants violated ORS § 659A.030.

55. As a direct and proximate result of Defendants' unlawful conduct, Ms. Harris has suffered and continues to suffer damages, including but not limited to lost wages and benefits, emotional distress, humiliation, embarrassment, and loss of enjoyment of life.

56. Defendants' actions were intentional, willful, malicious, and/or done with reckless disregard for Plaintiff's rights under ORS § 659A.030, entitling Plaintiff to punitive damages.

## COUNT IV:

### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e ET SEQ. CONSTRUCTIVE DISCHARGE BECAUSE OF SEX
(Against BTDS)

57. Ms. Harris incorporates all paragraphs and allegations in this Complaint listed above as if fully alleged herein.

58. Defendant BTDS created and permitted working conditions that were so intolerable that a reasonable person in Ms. Harris's condition would feel compelled to resign.

59. Plaintiff made reasonable efforts to resolve the situation by speaking with BTDS. BTDS knew of the harassment perpetrated by Defendant Abdelmessih but took no action to remedy the situation.

60. Ms. Harris's resignation was a foreseeable result of the intolerable working conditions created and maintained by BTDS and/or a reasonable person would have found the conditions to be intolerable and left because of the circumstances.

61. This constructive discharge violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Constructive discharge constitutes an adverse employment action and unlawful sex discrimination under Title VII.

62. As a direct and proximate result of Defendant's unlawful conduct, Ms. Harris has suffered and continues to suffer damages, including but not limited to lost wages and benefits, emotional distress, humiliation, embarrassment, and loss of enjoyment of life.

63. Defendants' actions were committed with malice or with reckless disregard for Plaintiff's federally protected rights, entitling her to punitive damages.

**COUNT V**

<u>TENNESSEE HUMAN RIGHTS ACT</u>
<u>CONSTRUCTIVE DISCHARGE BECAUSE OF SEX</u>
<u>(Against BTDS)</u>

64. Ms. Harris incorporates all paragraphs and allegations in this Complaint listed above as if fully alleged herein.

65. Defendant BTDS created and permitted working conditions that were so intolerable that a reasonable person in Ms. Harris's condition would feel compelled to resign.

66. Plaintiff made reasonable efforts to resolve the situation by speaking with BTDS. BTDS knew of the harassment perpetrated by Defendant Abdelmessih but took no action to remedy the situation.

67. Ms. Harris's resignation was a foreseeable result of the intolerable working conditions created and maintained by BTDS and/or a reasonable person would have found the conditions to be intolerable and left because of the circumstances.

68. This constructive discharge violated the THRA. Constructive discharge constitutes an adverse employment action and unlawful sex discrimination under the THRA.

69. As a direct and proximate result of Defendant's unlawful conduct, Ms. Harris has suffered and continues to suffer damages, including but not limited to lost wages and benefits, emotional distress, humiliation, embarrassment, and loss of enjoyment of life.

70. Defendants' actions were committed with malice or with reckless disregard for Plaintiff's rights under the THRA, entitling her to punitive damages.

## COUNT VI

### OR. ADMIN. RULE 839-005-0011
### CONSTRUCTIVE DISCHARGE BECAUSE OF SEX
(Against BTDS)

72. Ms. Harris incorporates all paragraphs and allegations in this Complaint listed above as if fully alleged herein.

72. Defendant BTDS intentionally created or intentionally maintained discriminatory working conditions that were so intolerable that a reasonable person in Ms. Harris's condition would feel compelled to resign and the discriminatory working conditions related to Plaintiff's protected class status as a female.

73. Plaintiff made reasonable efforts to resolve the situation by speaking with BTDS. BTDS knew of the harassment perpetrated by Defendant Abdelmessih but took no action to remedy the situation.

74.     Ms. Harris's resignation was a foreseeable result of the intolerable working conditions created and maintained by BTDS and/or a reasonable person would have found the conditions to be intolerable and left because of the circumstances.

75.     This constructive discharge violated Oregon Administrative Rule 839-005-0011 as BTDS desired to cause Plaintiff to leave her employment as a result of the intolerable working conditions, or knew or should have known that Plaintiff was certain, or substantially certain, to leave her employment as a result of the intolerable working conditions. Constructive discharge constitutes an adverse employment action and unlawful sex discrimination under the ORS.

76.     A substantial portion of the harassment and acts culminating in constructive discharge occurred in the state of Oregon.

77.     As a direct and proximate result of Defendant's unlawful conduct, Ms. Harris has suffered and continues to suffer damages, including but not limited to lost wages and benefits, emotional distress, humiliation, embarrassment, and loss of enjoyment of life.

78.     Defendants' actions were committed with malice or with reckless disregard for Plaintiff's rights under Oregon Administrative Rule 839-005-0011, entitling her to punitive damages.

## COUNT VII

### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e ET SEQ.
RETALIATION
(Against BTDS)

79.     Ms. Harris incorporates all paragraphs and allegations in this Complaint listed above as if fully alleged herein.

80.     Ms. Harris engaged in protected activity when she opposed Defendant Abdelmessih's sexual harassment and reported the same to BTDS management/HR.

81. Defendants subjected Plaintiff to adverse employment actions, including increased harassment and, ultimately, constructive discharge, because of her protected activity.

82. Defendant Abdelmessih further retaliated against Ms. Harris after her employment ended by interfering with her subsequent employment opportunities through defamatory statements to the prospective employer.

83. These retaliatory actions violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

84. As a direct and proximate result of Defendant's unlawful conduct, Ms. Harris has suffered and continues to suffer damages, including but not limited to lost wages and benefits, emotional distress, humiliation, embarrassment, and loss of enjoyment of life.

85. Defendants' actions were committed with malice or with reckless disregard for Plaintiff's federally protected rights, entitling her to punitive damages.

## COUNT VIII

### TENNESSEE HUMAN RIGHTS ACT
### RETALIATION
### (Against BTDS)

86. Ms. Harris incorporates all paragraphs and allegations in this Complaint listed above as if fully alleged herein.

87. Ms. Harris engaged in protected activity when she opposed Defendant Abdelmessih's sexual harassment and reported the same to BTDS management/HR.

88. Defendants subjected Plaintiff to adverse employment actions, including increased harassment and, ultimately, constructive discharge, because of her protected activity.

89. Defendant Abdelmessih further retaliated against Ms. Harris after her employment ended by interfering with her subsequent employment opportunities through defamatory statements to the prospective employer.

90. These retaliatory actions violated the Tennessee Human Rights Act.

91. As a direct and proximate result of Defendant's unlawful conduct, Ms. Harris has suffered and continues to suffer damages, including but not limited to lost wages and benefits, emotional distress, humiliation, embarrassment, and loss of enjoyment of life.

92. Defendants' actions were committed with malice or with reckless disregard for Plaintiff's protected rights under the THRA, entitling her to punitive damages.

## COUNT IX

OREGON REVISED STATUTE § 659A.030
RETALIATION
(Against BTDS)

93. Ms. Harris incorporates all paragraphs and allegations in this Complaint listed above as if fully alleged herein.

94. Ms. Harris engaged in protected activity when she opposed Defendant Abdelmessih's sexual harassment and reported the same to BTDS management/HR.

95. Defendants subjected Plaintiff to adverse employment actions, including increased harassment and, ultimately, constructive discharge, because of her protected activity.

96. A substantial portion of the harassment occurred while Ms. Harris was performing work for BTS in Oregon.

97. These retaliatory actions violated the ORS 659.030.

98.     As a direct and proximate result of Defendant's unlawful conduct, Ms. Harris has suffered and continues to suffer damages, including but not limited to lost wages and benefits, emotional distress, humiliation, embarrassment, and loss of enjoyment of life.

99.     Defendants' actions were committed with malice or with reckless disregard for Plaintiff's protected rights under ORS 659.030, entitling her to punitive damages.

## COUNT X

### NEGLIGENT HIRING, RETENTION, AND SUPERVISION
(Against BTDS)

100.     Ms. Harris incorporates all paragraphs and allegations in this Complaint listed above as if fully alleged herein.

101.     Defendant BTDS knew or should have known of Defendant Abdelmessih's propensity to engage in sexual harassment, as he had been terminated from his previous employment for sexual harassment and numerous BTDS employees observed his conduct toward women including Ms. Harris.

102.     Despite this knowledge, BTDS hired and retained Defendant Abdelmessih in a supervisory position with authority over female employees.

103.     BTDS failed to properly supervise Defendant Abdelmessih and failed to take appropriate steps to prevent him from harassing Ms. Harris. Defendant's actions are a violation of Tennessee and Ohio common law.

104.     BTDS's negligence in hiring, retaining, and supervision Defendant Abdelmessih directly and proximately caused harm to Ms. Harris.

105.     As a direct and proximate result of Defendant's unlawful conduct, Ms. Harris has suffered and continues to suffer damages, including but not limited to lost wages and benefits, emotional distress, humiliation, embarrassment, and loss of enjoyment of life.

106.     Defendants' actions were committed with malice or with reckless disregard, entitling her to punitive damages.

## COUNT XI

### BATTERY
(Against Defendant Abdelmessih)

107.     Ms. Harris incorporates all paragraphs and allegations in this Complaint listed above as if fully alleged herein.

108.     Defendant Abdelmessih intentionally made harmful and offensive contact with Ms. Harris's person by slapping her face with such force that it left a mark, poking her breasts without her consent, and forcing her head down towards his crotch.

109.     This contact was unwanted, unprovoked, and offensive to Ms. Harris. Defendant's actions are a violation of Tennessee and Oregon common law.

110.     As a direct and proximate result of Defendant's battery, Ms. Harris suffered physical pain, emotional distress, humiliation, embarrassment, and other damages.

111.     The Defendant acted maliciously, intentionally, and/or recklessly, entitling Plaintiff to punitive damages.

### COUNT XII
### BATTERY – VICARIOUS LIABILITY
(Against BTDS)

112.     Ms. Harris incorporates all paragraphs and allegations in this Complaint listed above as if fully alleged herein.

113.     Defendant Abdelmessih intentionally made harmful and offensive contact with Ms. Harris's person by slapping her face with such force that it left a mark, poking her breasts without her consent, and forcing her head down towards his crotch.

114. This contact was unwanted, unprovoked, and offensive to Ms. Harris. Defendant's actions are a violation of Tennessee and Ohio common law.

114. At the time of the aforementioned battery, Defendant Abdelmessih was acting within the course and scope of his employment with BTDS in that all of these incidents occurred during work sanctioned meetings, events, or other functions. Under the doctrine of respondeat superior, BTDS is vicariously liable for the tortious actions of Defendant Abdelmessih.

115. As a direct and proximate result of Defendant's battery, Ms. Harris suffered physical pain, emotional distress, humiliation, embarrassment, and other damages.

116. Defendants acted maliciously, intentionally, and/or recklessly, entitling Plaintiff to punitive damages.

**COUNT XIII**
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(Against All Defendants)

117. Ms. Harris incorporates all paragraphs and allegations in this Complaint listed above as if fully alleged herein.

118. Defendants intended to cause emotional distress or knew or should have known that their conduct would result in serious emotional distress. Defendant Abdelmessih intended to cause emotional distress by way of his sexual harassment of Ms. Harris and/or should have known that his conduct would result in serious emotional distress. Defendant BTDS knew or should have known that by failing to take any appropriate and/or significant remedial steps to prevent Defendant Abdelmessih's conduct that Ms. Harris would experience serious emotional distress.

119. Defendant BTDS is liable and legally responsible for the actions of their employees, managers, and supervisors under theories of Agency, Respondent Superior and Vicarious Liability

as well as Tennessee Law generally. Defendant BTDS is liable for the damage caused by Defendant Abdelmessih against Ms. Harris.

120. This conduct was extreme and outrageous, going beyond all possible bounds of decency and regarded as intolerable in a civilized community.

121. The Defendants' actions proximately caused Ms. Harris's psychological injury.

122. Ms. Harris's mental anguish was so serious that no reasonable person could be expected to endure it.

123. The actions of the Defendants have caused Ms. Harris to experience sleeplessness, depression, anxiety, crying, emotional outburst, nightmares, nausea, fright, grief, shame, humiliation, embarrassment, anger, disappointment, worry, fear, stress, lethargy, increased irritability, decreased job satisfaction, isolation, lower self-esteem, panic attacks, stomach/gastrointestinal issues and intimacy issues. The consistency and frequency of these issues have been consistent and significant since the harassment began during Ms. Harris's employment with BTDS.

124. The conduct of each Defendant was intentional, extreme, and outrageous and warrants the imposition of punitive damages to deter similar conduct in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandi Nicole Harris respectfully requests that this Honorable Court enter judgment against the Defendants granting the following relief:

A. Awarding back pay and benefits to the Plaintiff;

B. Awarding statutory liquidated damages to the Plaintiff;

C. Awarding reinstatement, or front pay and benefits in lieu of reinstatement, to the

Plaintiff;

D.      Awarding compensatory damages to the Plaintiff;

E.      Awarding punitive damages to the Plaintiff;

F.      Awarding pre-judgment and post-judgment interest to Plaintiff;

G.      Awarding attorneys' fees and costs to Plaintiff;

H.      Awarding such other relief as the Court may deem just and equitable.

Respectfully submitted this 5th day of November, 2025 .

BRANDI NICOLE HARRIS

By Counsel

s/ *Alexis I. Tahinci*
Alexis I. Tahinci (BPR #031808)
Tahinci Law Firm PLLC
105 Ford Ave., Suite 3
Kingsport, TN 37663
Ph: (423) 406-1151
F: (423) 815-1728
alexis@tahincilaw.com
COUNSEL FOR PLAINTIFF